**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICKY L. DAVIS,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Civil Action No. 06-1614** |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**August 6, 2007**

### I.    Introduction

Plaintiff Ricky L. Davis brings this action pursuant to 42 U.S.C. section 405(g) and 42 U.S.C. section 1383(c)(3), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application pursuant to the Social Security Act ("Act") for Disability Insurance Benefits ("DIB").[1]

After careful consideration of the Administrative Law Judge's ("ALJ") decision, the cross-motions for summary judgment, the supporting briefs, and the entire record, the Court finds the ALJ's decision that plaintiff's physical impairments do not meet the criteria necessary to establish the requisite severity for a listed impairment, and that the plaintiff retains the residual functional capacity ("RFC") to perform certain sedentary duty work, is supported by substantial evidence.  The Court therefore will grant the defendant's motion for summary judgment, and deny the plaintiff's motion.

---

[1] Act of 14 Aug. 1935, Pub. L. No. 271, ch. 531, §§ 201-33 (codified as amended at 42 U.S.C. §§ 401-33).

**II.     Procedural History**

Plaintiff filed his application for DIB on December 31, 2003, alleging disability from work as of December 15, 2002, because of residual effects of a back injury sustained in 1999. This claim was denied on April 26, 2004 and the plaintiff filed a timely written request for hearing. A hearing was then held on December 8, 2005, before ALJ Alma S. Deleon at which time the plaintiff, represented by counsel, testified, as did Elizabeth Lucas, an impartial vocational expert ("VE").

On March 31, 2006, the ALJ denied the plaintiff's claim, finding that, although the plaintiff suffers from severe impairments, he does not have an impairment, or combination thereof, that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 14-15.  Furthermore, the ALJ ruled that the plaintiff retained the RFC to perform work at the sedentary exertional level which does not involve more than limited pushing and pulling in the lower extremities, nor more than occasional bending, stooping, crouching, balancing, climbing, squatting, kneeling, and walking, nor to be exposed to extreme cold, nor to make complex decisions, nor to follow detailed instructions, nor to carry more than 10 pounds.  R. 15-16.  Finally, the ALJ found that such jobs exists in sufficient numbers in the national economy and include an addresser, a surveillance system monitor, and a food and beverage order clerk.  R. 20-21.

Subsequently, on September 29, 2006,  the Appeals Council denied the plaintiff's request for review of the ALJ's decision. Thus, the ALJ's decision stands as the final order of the Commissioner, for which the plaintiff has filed complaint with this Court seeking judicial review.

2

### III.     Statement of the Case

A  review of the plaintiff's documented medical history shows that he has suffered from chronic low back pain, R. 164, since a 1999 motor vehicle accident which caused a compression fracture of the L3 vertebral body as well as fracture of the left tibia and fibula, superior rib fractures, a left inferior ramus fracture, and S3 and S4 sacral fractures.  R. 97.  He has been treated by a pain specialist, Dr. Alfred S. Tung, with nerve blocks and injections to the back and hip with good initial pain relief, yet without resolution.  R. 154, 166.  He has also engaged in physical therapy, which, in a December 2, 2003 report, his treating physician recommended be continued.  R. 166-67.  In October of 2003, Dr. Frank T. Vertosick noted in a letter that the plaintiff's complaints of pain pointed more to meralgia (pain in the thigh) than radiculopathy (disease of the spinal nerve roots) as a cause of pain.  R. 132.  Then again, in February of 2004, Dr. John J. Moossy stated that "[the plaintiff] probably has meralgia paresthetica as a major feature of his leg pain."  R. 160.

Medical records from Shadyside Family Health Center current through January 2004 show treatment for various complaints including back and leg pain and a report from Dr. Donald J. Rhodes gave a diagnosis of chronic low back pain and healed closed fracture of vertebral.  Dr. Rhodes' instructions to the plaintiff were that physical therapy and chiropractic treatments may be helpful along with increased activity.  These recommendations were in addition to a continued prescription for Vicodin for severe pain and Baclofen to reduce symptoms.  R. 164.  In February of 2004, Dr. John J. Moossy, recommended repeating the epidural injections administered by Dr. Tung four months earlier.  R. 160.  Finally, in his occupational capacity

assessment, Dr. Frank Bryan, a disability determination services physician, categorized the plaintiff's abilities as rising to the level of medium exertion; however, the ALJ discounted this assessment to a level of sedentary exertion, in "giving maximum credence to the claimant's subjective complaints."  R. 19, 181.

After a thorough review of the evidentiary record, the ALJ concluded that, although the plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms (R. 15), his subjective descriptions of the severity of the limitations which resulted from his pain were not supported by the record, and therefore, his claims were not credible.

Specifically, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision.

3. The claimant has the following severe impairments: degenerative disc disease and low back, status post motor vehicle accident in 1999 involving transverse fractures of the lumbar vertebrae, compression fracture at L3 and other tibial and rib fractures.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform work at the sedentary exertional level lifting and carrying no more than 10 pounds, that does not involve more than limited pushing and pulling in his lower extremities, or more than occasional bending, stooping, crouching, balancing, climbing, squatting, kneeling, and walking, or to be exposed to extreme cold, or to make complex decisions, or to follow detailed instructions.

4

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on June 3, 1976 and was 26 years old on the alleged disability onset date, which is defined as a younger individual 18-44.

8. The claimant has a limited (ninth grade) education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a "disability," as defined in the Social Security Act, from December 15, 2002 through the date of this decision.

R. 14-21.


**IV.    Standards of Review**

Judicial review of  the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[2] and 1383(c)(3)[3].  Section 405(g) permits a district court to review

---

[2]  Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[3] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113,

6

118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48

F.3d 114, 117 (3d Cir. 1995).  "A single piece of evidence will not satisfy the substantiality test

if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason*

*v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114

(3d Cir. 1983).  The substantial evidence standard allows a court to review a decision of an ALJ,

yet avoid interference with the administrative responsibilities of the Commissioner.  *See Stewart*

*v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

        In reviewing the record for substantial evidence, the district court does not weigh the

evidence or substitute its own conclusions for those of the fact finder.  *Rutheford*, 399 F.3d at

552.  In making this determination, the district court considers and reviews only those findings

upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the

medical record by supplying additional findings from its own independent analysis of portions of

the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d

34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to

consider all of the relevant and probative evidence, attempted to rectify this error by relying on

medical records found in its own independent analysis, and which were not mentioned by the

ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he

grounds upon which an administrative order must be judged are those upon which the record

discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

7

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

8

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted).  *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59;  *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59;  *Kangas*, 823 F.2d at 777.  Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

Vocational Expert - Hypothetical Questions

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert.  *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted).  Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as  uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v.*

10

*Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala*

*v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to

VEs).[4]  *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical

questions include medical impairments, age, education, work experience and RFC); *Boone*, 353

F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory

testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical

questions to a vocational expert "often boil down to attacks on the RFC assessment itself."

Rutherford, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"),

a publication of the United States Department of Labor that contains descriptions of the

requirements for thousands of jobs that exist in the national economy, in order to determine

whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d

Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative

notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. §

416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant

DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination,

the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material

---

[4] Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the

impairment must be considered before the Secretary denies the payment of disability benefits."
*Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not
just make conclusory statements that the impairments do not equal a listed impairment in
combination or alone, but rather, is required to set forth the reasons for his or her decision, and
*specifically* explain why he or she found a claimant's impairments did not, alone or in
combination, equal in severity one of the listed impairments. *Fargnoli*, 247 F.3d at 40 n. 4,
*citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as
to whether claimant is unable to return to past employment or perform substantial gainful
activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was
needed to make a sound determination." *Ferguson*, 765 F.2d 36.

Claimant's Subjective Complaints of Impairments and Pain

An ALJ must do more than simply state factual conclusions, but instead must make
specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The
ALJ must consider all medical evidence in the record and provide adequate explanations for
disregarding or rejecting evidence, especially when testimony of the claimant's treating
physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984);
*Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious
consideration to the claimant's subjective complaints, even when those assertions are not
confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68
(3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work.  This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated:  "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

14

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself*." *Green,* 749 F.2d at 1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence*. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own

expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ ALJ   "must 'explicitly' weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects."  *Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli*, 247 F.3d at 42-43 (although ALJ may

weigh conflicting medical and other evidence, he must give some indication of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . .  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[5]  Medical opinions on matters

---

[5] Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3)

reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

 SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[6] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis

---

 through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

[6] SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra.* Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and

20

Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

### V.      Discussion

Plaintiff makes several related arguments which all essentially challenge the ALJ's assessment of the plaintiff's RFC in light of his subjective accounts of the debilitating effects of his pain, which he argues the ALJ improperly rejected without adequately explaining her reasoning.

The plaintiff testified before the ALJ that his pain precludes him from standing for more than eight minutes, sitting still for more than fifteen minutes, sleeping through the night, lifting more than five pounds, and performing most regular house chores.  R. 215-217.  As stated earlier, it is incumbent upon the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  *See* 20 C.F.R. § 404.1529(c); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d. Cir. 1999).  From this it follows that if the ALJ concludes that the claimant's testimony is not credible, he or she must indicate the specific basis for such a conclusion.  *See Cotter*, 642 F.2d at 705.

The ALJ accurately cited opinions and progress notes from some of the plaintiff's treating sources who have provided care over a substantial pertinent period, which are at odds

with the plaintiff's testimony. For example, the ALJ relies on the medical opinion of Dr. Donald

J. Rhodes, whose submitted reports on record span a period from July 30, 2001 through February

12, 2004.[7]  The plaintiff's most recent visit to Dr. Rhodes on the record is January 7, 2004.  At

that time the plaintiff was encouraged to again try chiropractic treatments.  R. 162.  He was

prescribed Vicodin for severe pain and Baclofen to reduce symptoms.  A follow up appointment

was to be scheduled only after a surgical consult, or after having given a trial of one or more of

the recommended treatments (physical therapy, chiropractor, Baclofen and increased activity).

R. 164.  These reports contained nothing which indicate the patient is unable to perform work at

a sedentary exertional level, nor do they prescribe reduced activity.  Rather, the recommended

treatments point to pain management and increased activity.  Neither Dr. Rhodes nor any other

treating physician has opined that the plaintiff's pain renders him incapable of performing

substantial gainful work.  The plaintiff does not point to any medical opinion, or piece of record

evidence that the ALJ failed to discuss which substantiates his subjective claims that he is unable

to perform even sedentary work..

Plaintiff's brief states that "a claimant satisfies his initial burden when a doctor

substantiates subjective claims of inability to return to previous employment."  Brief for Plaintiff

(doc. no. 13) at 8.  However, the ALJ did not declare the plaintiff able to return to previous

employment, but only that he had the ability to perform work at the sedentary exertional level.

Dr. Bryan examined the medical records and opinions of treating sources and determined that the

---

[7] Although a review of these records reveals that Dr. Rhodes is not the treating or
ordering physician on reports before December 2, 2003, the records covering the cited
period were submitted by Dr. Rhodes.  R. 2, 161-180.

plaintiff had the RFC to perform sedentary work, and the plaintiff has not offered any medical evidence to the contrary. This Court finds there to be substantial evidence supporting the ALJ's decision on this matter.

Additionally, while the plaintiff suffers multiple severe ailments and states that he suffers from meralgia, there is no evidence he cannot work at the sedentary exertional level because of these conditions.  Notably, although more than one physician raised the possibility of meralgia as a cause of the plaintiff's pain, this hypothesis has not been confirmed, according to the record, by any diagnostic test.  Furthermore, the plaintiff has presented no additional evidence to corroborate this hypothesis, and the mere possibility of a meralgic condition, without evidence as to how such condition prevents him from performing sedentary work, does not suffice to demonstrate disability.

The plaintiff also cites a string of cases for the proposition that simple activities - such as feeding pets, watching television, or attending church - are not per se evidence of non-disability. Brief for Plaintiff (doc. no. 13) at 9-10.  The ALJ did not appear to consider such activities to be per se evidence of non-disability in this case.  In fact, taking into account the subjective nature of determining the severity of pain, the ALJ gave substantial deference to the plaintiff's description of pain by ruling that the plaintiff was only capable of working at the sedentary exertional level. This ruling was deferential because it assumed limitations that were more drastic than those found by the DDS physician.  DDS physicians are required to base their conclusions on all evidence in the claimant's file. R. 181.  Additionally, Dr. Bryan specifically referenced the conclusions of Dr. Frank Vertosick, a neurosurgeon, which were based on a review of the

plaintiff's medical record, x-rays and physical examination.  Dr. Bryan then reported that the plaintiff was capable of medium exertional level work.  R. 181-90.  For example, the DDS physician, Dr. Frank Bryan, marked in his report that the plaintiff was capable of frequently [8] lifting and carrying 25 pounds, pushing and pulling without limitations, and of performing eight hours of work without any postural limitations such as climbing, balancing, stooping, etc.  R. 182-83.  The ALJ's hypothetical question to the VE assumed the plaintiff's limitations as follows: to lift and carry no more than ten pounds; to push and pull, limited in his lower extremities; and to climb, balance, stoop, squat, kneel, and bend only on occasion.  R. 224.  The plaintiff argues that the ALJ incorrectly evaluated the plaintiff's daily activities and then cites a host of cases which accurately emphasize the point that "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity."  Brief for Plaintiff (doc. no. 13) at 10.  However, the plaintiff does not demonstrate to the Court specifically how the ALJ exaggerated any of the capabilities of the plaintiff based on a review of daily activities, or held the plaintiff to such a draconian standard.

This Court finds the plaintiff's generalized and conclusory allegations to be unsubstantiated by this Court's review of the medical record and the ALJ's decision.  Furthermore, the ALJ gave due consideration to the plaintiff's alleged limitations.  Additionally, in completing her duty to review the entire record, the ALJ found substantial evidence, namely the opinions of treating sources as well as Dr. Bryan's RFC report, to conclude that the plaintiff is not disabled under the Act.

---

[8] According to the record "frequently" is defined as: one-third to two-thirds of the time in an eight hour work day.  R. 181.

The ALJ's finding that the plaintiff is not disabled is also supported by the record testimony of vocational expert, Elizabeth Lucas. Responding to the accurate hypothetical posed by the ALJ,[9] Ms. Lucas stated that a 29 year old with a ninth grade education, who is limited according to the hypotheticals stated by the ALJ, would be able to work within the national economy as an addresser, a surveillance system monitor, or a food and beverage order clerk, all at a sedentary exertional level.  R. 224-25.  Ms. Lucas' expert testimony is substantial evidence to support the ALJ's decision, since the ALJ's hypothetical question liberally described the plaintiff's impairments.  *See Burns*, 312 F.3d at 123.

The plaintiff relies on the opinion of the vocational expert for the proposition that the regularity of the plaintiff's pain prevents him from performing "any work".  Brief for Plaintiff (doc. no. 13) at 9.  The VE opined that a person off task for 20 minutes in an hour would not be able to perform the positions in the national economy held by the ALJ to be within the plaintiff's RFC.  However, this answer was in response to the plaintiff's attorney's inaccurate hypothetical questions[10].  Because plaintiff's subjective descriptions of the limitations resulting from his pain are not supported by any record evidence, the VE's response to the flawed hypothetical does not help to establish disability.

---

[9] Limitations cited: lift and carry no more than ten pounds; to sit or stand at his discretion; to push and pull, limited in his lower extremities; to bend, stoop, crouch, balance, climb, squat, kneel, and walk on occasions; to be exposed to extreme cold; to make complex decisions; and to follow detailed instructions.  R. 224.

[10] The hypothetical, an individual who is off task for 20 minutes in an hour, was based solely on the plaintiff's assertions that he can only watch television for 45 minutes before "the pain bothers [him] or [he is] real groggy," and that it is about a half an hour before he can focus again on the television.  R. 222-23.

The ALJ is required to give serious consideration to the plaintiff's subjective complaints. *Mason*, 994 F.2d at 1067-68; *Welch*, 808 F.2d at 270.  This Court finds that the ALJ gave due consideration to plaintiff's complaints and adequately explained her reasons for rejecting some in reaching her conclusion.

This Court's review of the ALJ's decision and the record in this case shows that the ALJ most certainly considered all of the relevant evidence, that this evidence cannot support a finding of "disabled," and that the ALJ adequately explained her reasoning in reaching her conclusion. Although certain evidence could be construed to support a finding of disability, given the applicable standards of review, this Court cannot find there is not substantial evidence for the ALJ to determine that the plaintiff retained the RFC for sedentary exertional level work.

## VI.    Conclusion

This Court recognizes that the plaintiff does indeed suffer from numerous serious impairments, including a level of pain and physical discomfort that is likely quite daunting. Although sympathetic, however, the Court is constrained to conclude, in light of the foregoing standards of review, that the ALJ's findings of fact are supported by substantial evidence on the record, and her conclusions drawn therefrom are sound.  Accordingly, the Court will grant the

Commissioner's Motion for Summary Judgment, deny Plaintiff's, and enter judgment in favor of

the Commissioner.

     An appropriate order will follow.


          /s/ Arthur J. Schwab      
**Arthur J. Schwab**
**United States District Judge**

cc: all ECF registered counsel


27